Good morning everyone, and we'll call the first case for today, the case of Jackie Nichols v. City of Rehoboth Beach et al., Mr. Finger. Yes, good morning, your honors. May it please the court, with the court's permission, I'd like to reserve three minutes of my time. That behoves Sylvie Grand. Thank you, your honor. As the court is aware, this appeal involves the doctrine of municipal taxpayer standing. Over a century ago, the Supreme Court set forth a very simple rule of taxpayer standing and said, unlike federal taxpayers, municipal taxpayers have a direct and immediate interest in the application of their funds, and so they are entitled to standing in federal court whenever they're challenging either an improper expenditure of municipal funds or a circumstance which creates a financial burden on them. How is this an improper expenditure? The expenditure was on an election. That's correct, your honor. Which is a valid purpose. Now, your contention is that because Delaware put certain requirements in, that the manner of the election was unconstitutional. But is this the direct pocket hook injury that you're supposed to have in order to have standing? Because the election was a valid purpose, not an unlawful purpose. It may have a valid purpose, your honor, but it was an unlawful application of that purpose. And to further answer your honor's question, it is not simply the expenditure. It is the result of that expenditure, the imposition of $52 million in municipal debt. But you're here in federal court attempting to challenge that. Doesn't your client and other residents of Rehoboth Beach have an opportunity to challenge that in state court? Isn't there an appropriate way to do that? They certainly do have that, but they also have the right, I believe, to come to federal court under the Civil Rights Act claiming an unconstitutional violation or a violation of the United States Constitution. The federal courts are the place to go for that. There may be procedural hurdles that they have to bring. But I think the question that Judge Rendell was focusing on and my query is, what's the expenditure that you're complaining about that gives you the standing to be here to allow us to get to the merits? Certainly, and I think there are two points to that. Keep your voice up if you like. Excuse me. One is the expenditure of funds to enable a vote in a manner which violates the Equal Protection Clause. The other is the financial burden of $52 million in municipal debt as a result of what we claim is an unconstitutional voting procedure. What's your best case with the proposition that you have standing here? The best precedent we cite? Yes. I would say the Frothingham case and more importantly, the Crampton case. But the case against you is ROCKS, the Third Circuit. You're bidding with ROCKS, and that was a municipal taxpayer case. Yes and no, Your Honor. If Your Honor looks at the facts, there was no allegation of a misuse of taxpayer funds. I know the case. I was on a panel, as a matter of fact. Well, I won't presume to know more than you. I'm not saying I remember exactly what it was, but I did need to catch up, so I'm sorry. But in my reading of the case and of the lower court case, there was no allegation that as a consequence of the bidding procedure which was being challenged, there was an abuse or misuse or mis-expenditure of taxpayer funds. Why do you believe that prudential concerns are less demanding in a municipal taxpayer case that they were in ROCKS? I'm sorry, Your Honor. If Your Honor is asking why the prudential standing would not apply, I would say, first of all, it's never been adopted by the Supreme Court in the context of municipal taxpayer standing. And I would commend to this court the unblocked Sixth Circuit opinion we cite, where the court found it was Smith v. Jefferson County. The court found that there was no prudential standing for individual standing. But notwithstanding that, it's found that two of the plaintiffs who were teachers had standing under the doctrine of municipal taxpayer standing, even though as individuals they would not. But in effect, aren't you really contesting the expenditure of tax funds in your complaint? There's two points. Tax funds and the imposition of municipal debt, which are paid for by tax funds. Yes, exactly. All right. But the city of Rehoboth Beach, rightly or wrongly, their board made the decision, we need to borrow $52 million for erosion and to make some repairs to the building. And there's a process by which they can do that. And it's called the process, there's resolutions, and they have to have an election. And they set the election in June of 2015, and 1,200 and some people come out, and by a slim majority, it gets approved. Yes, Your Honor. It seems to me that following that, in a very general sense, they did everything that was correct. And the voters, by a narrow margin, decided, go ahead, borrow the funds. We think it's a good improvement. So your complaint, as I understand it, is that they let people vote twice or more, and that to be a resident, you had to be there six months. Correct. Okay. Where is the expenditure of dollars? The expenditure of dollars is in allowing the vote to proceed and allowing the debt to be incurred through that unconstitutional process. Now, I understand Your Honor may be suggesting that there's a split between the procedure and the wrong. However, the procedure here enabled the wrong. But what case says that a procedure that enables the wrong can give you taxpayer standing? I mean, I'm not finding it. Nor am I, Your Honor, but nor am I finding any case that says the other way. But in this case it is. Well, but there has to be a tie between the illegality and the expenditure of the money, and the tie has to be direct monetary injury. That's what the case law says. Well, again, I will refer the Court back to the Crampton case in which there was. I mean, we're talking ancient history here with some pretty general language. We are. But that is the language that the courts have followed since in different fact patterns. What about the ACLU New Jersey v. Township of Wall case where they had said that tax revenues need to be spent on the illegal practice? What was spent on this illegal two-votes, six-month practice? The amount that was paid to enable this vote in a specific unconstitutional manner, which could have been done lawfully and which allowed this imposition on the taxpayers, could not have been done or was only done through the expenditure. How do you get over the de minimis exception? I guess my answer would be that we don't know this de minimis. If that's a factual matter, that would have to be done in the first bucket. I get back to Crampton. It talks about an illegal disposition of the monies or an illegal creation of a debt. It's talking about the direct use of money for a purpose which is unlawful, which here would be the election. And the election is something that the county would have done anyway or the township would have done anyway, would it not? I mean, it could have been done in a constitutional or unconstitutional manner, but you're not saying that Rehoboth couldn't spend money on an election, are you? No, we're not, Your Honor. But we're saying that if that money is directly causing a violation, then the standing should be permitted. Well, how does it directly cause a violation? It is there because but for the vote, but for the election, there would not be an imposition of a municipal liability. Let me give you a four-count complaint. The first two counts really deal with the six-month voting requirement. Yes, Your Honor. Okay. Assume that you have standing and so forth, but do you have prudential standing? Shouldn't we have someone who wasn't allowed to vote because he was only there five and a half months or whatever? Isn't that more appropriate for your claim for the first two counts? You're not seeking damage, you're just seeking equitable and injunctive relief. Correct, Your Honor. So why should, as to those two counts, aren't they pure and simple, number one, state court? No, they would be federal, I would say. The expenditure of funds to forward the election by the newspaper or so forth, that would be purely a state court matter, would it not? Yes, it would, Your Honor. Okay. And on the six-month residence requirement, assuming you have standing, constitutional standing on that, how do you have prudential standing when you weren't injured by that at all? I'll answer the question this way, Your Honor. Prudential standing in the context of individual standing, I would agree with Your Honor that she's not participated, but in the context of municipal standing, the standing arises from the injury to the treasury, not from the specific violation. But aren't you forwarding someone else's argument, really? You're stepping into someone else's shoes to put forward that argument. Ultimately, yes, Your Honor. Now, as I said, for the purpose of municipal standing, the injury is not so much the fact that she didn't get to vote. The injury is that the vote resulted in a burden upon her as a municipal taxpayer. Okay. How is your response to the defendant's argument that none of the decisions you cite involve plaintiffs attempting to transform a challenge to a state-imposed voting requirement into a taxpayer claim? The answer is that the claim is that they're claiming it's a state-made claim. If that doesn't matter, then the answer is no, it's actually not, because we're claiming 14th Amendment violations. But it's interesting that how could the 14th Amendment be any different concerning municipal claims vis-à-vis a claim against the state, whereas clearly you would not have standing to challenge a state expenditure. Well, because that is the distinction the United States Supreme Court has made, and the expenditure is that the injury is not being caused by the state. It's the township or the city of Rehoboth that is imposing the obligations upon the municipal taxpayer. I say I'm almost out of time, so unless Your Honor would have any questions. Let me ask you one other brief question. Aren't you really just challenging the vote? Aren't you challenging the vote itself? Isn't that why you're here? Yes, Your Honor.  The municipal bond issuance is what they're challenging. Okay. We'll have you back on rebuttal. Thank you, Your Honor. Mr. Walton. Good morning, Your Honors. Max Walton of Conley Gallagher, LLP, on behalf of the city of Rehoboth Beach, Sharon Lynn, and Sam Cooper. May it please the Court. Our standing is not a troublesome hurdle to be overcome. It's a jurisdictional prerequisite that has to be met. The district court's decision that Nichols lacks standing should be affirmed for three important reasons. First, the true nature and source of her claims are as a voter, and she lacks standing to bring those claims. Second, repackaging those claims as a municipal taxpayer expenditure claim is insufficient to confer standing based upon the expenditure's challenge, and her claims are not otherwise redressable. And third, and very importantly, Nichols fails to satisfy the prudential standing elements. Did Judge Sleek get it right when he said, oh, you know, she got to vote so her claim isn't cognizable, she really wasn't injured? Is that a correct analysis here? Yes. Judge Sleek got it exactly right, and I think the key case to look at is Worth v. Selden. But that misstates her contention. Her contention wasn't that she wasn't allowed to vote. Her contention was that the whole voting scheme was unconstitutional. Well, again, going to the nature and source, she's challenging the actual process by which the vote was taken. So, therefore, I believe Judge Sleek's intent was, look, she doesn't have standing to challenge the six-month residency requirement because she had the opportunity or because she wasn't affected by that requirement. In addition, with respect to, I'm going to call it the entity voter, the property owner provisions, she wasn't injured by that because she disavowed any claim of voter standing below. She just talked about that I have municipal taxpayer standing. So, again, he went straight to the nature and source of Nichols' claims. Aren't you asking us to reject the doctrine of municipal court standing when the Supreme Court, and I'll be the first to confess that there's cases all over the line here. I'm a little confused myself. What's said forth by the Supreme Court in Crampton and Frothingham, they recognize this distinction. And aren't we bound to apply it? There is a distinction, and yes, you're bound to apply it. It's not against the state. This is a municipal taxpayer, and they recognize this standing in these two cases and never rejected it. That is correct, Your Honor. But in this case, it's different because the expenditures are not some illegal act of the municipality. Well, he claims they are illegal because you've got people voting beyond the one person, one vote. There we go again. The Supreme Court just had something to say about that. Not much, but they said something. So under the 14th Amendment, I'm a resident there, and you own six pieces of property there, and you get six votes and I get one, and I'm paying taxes. I pay the taxes, and you get six votes. Is that fair under the 14th Amendment? I think that's a misreading of Section 40 of the Rehoboth Beach Code that has been advocated because it's either a vote as a resident or a vote as a property owner that appellants have. I read it several times. You can vote if you're a resident, or you can vote if you have a corporation that you own, and if you have two corporations that you own, or you have ten corporations, right? That's correct. So you have ten votes if you have ten corporations. Are you telling me that's fair under the 14th Amendment? The corporation as an entity each has a different vote, not the individual. I know, but still, I own a corporation, a single owner of a corporation. The setup here is such that a resident who owns no property, a leasing, has one vote, right? Correct. Someone who is a resident or non-resident and has property in the municipality and has several pieces of property owned by corporations, wholly by the individual, they'll have as many votes as he has a piece of property. Correct, if they're held by different entities under the same statute. You're telling me that that's equitable under the 14th Amendment? But this isn't a vote for town council kind of election. It's a referendum election, and the General Assembly set those up because it would be unfair for property owners or others to be shut out. But I think it's that state court's judgment that's the challenge here, and the reason that municipal taxpayer standing doesn't apply is what they're doing is challenging what the General Assembly set out as the requirements to go through. Well, you can't hide behind what your General Assembly has put forth. There's cases right on that. If the state law, which mandates that you do it one way, is unconstitutional, you can't hide behind that. And you've got to acknowledge, as you already have, that the Supreme Court has recognized taxpayer standing under Franklin and what is it? Franklin and him. Yeah. So I grant you you have something here concerning the six-month residence. I'm concerned with prudential standing, not with actual standing. But I'm very concerned about the voting where a taxpayer is paid more than his share. When he has to, when someone is voting for him to pay that, has more than one vote. The taxpayer, though, as it goes, the property owners, especially in a bond referendum, those are the ones who would be subject to it. And that's the rules that the General Assembly set forth. And with respect to, I don't believe that Rehoboth, as a municipality, can ignore those standards. And I'll provide the court the case of Rigan v. Office of State Employment Practices and Weyerhaeuser v. Marshall, which are set in our case. The municipality is bound to follow that, which the General Assembly does. Can't they ask for a mandamus or something in state court saying they don't want to follow this because it's unconstitutional under the 14th Amendment of the Federal Constitution? I suppose that a municipality could bring that type of claim. And you don't doubt that there are cases right on point that say that a municipality following a state requirement, which is unconstitutional, is not a valid defense. There are cases. There are cases. What's your best Supreme Court authority? On which point? Municipal taxpayer standing. The best Supreme Court authority, I would say, is Worth v. Selden because it says you have to go to the nature and source of the claim here. And I believe the nature and source of the claim is the money spent to conduct the election. The election itself was authorized by statute. Therefore, there's no illegal expenditure of taxpayer funds in any way. All right. In Daimler-Chrysler, they talked about depletion of the FISC through illegality. So you would draw the distinction, I guess I was asking your colleague, about the expenditure itself on an election versus the manner of the election? That's correct. How could someone challenge what happened here? Well, I think that, number one, as far as redressability, it would have to be brought before the election. But, number two, if you had someone who was a resident. Would that affect the standing inquiry? Yes, Your Honor. So they could have joined or asked to join the election? Yes. They could have asked to join the election or asked to do it. And, actually, it's been done in Delaware before. What money has been expended so far? I'm sorry? No funds have been expended so far. Well, they were expended to get, as far as standing goes to challenge the voting requirements, they could have done it prior to the election. The money that was voted on has not been dissipated yet. The bond issuance has not gone out yet. Yes, exactly. So it's still viable. But the true heart of the challenge here is to the voting requirements. And those voting requirements, that election would have been held no matter what the voting requirements were. Mr. Walton, I think Judge Rendell asked, who could have challenged? I'm sorry, Your Honor. You said before the election. I mean, who else? Who could have brought that action? Okay. The action could have been brought before the election by someone who was a resident of less than six months, in other words, someone who moved into the city. Who was aggrieved by that, who was aggrieved by and who would therefore not be allowed to vote. That's correct. But after the election, no one could challenge it? Redressability is an important component of standing. And in this case, there were 79 days between the time the special election was voted and there were 60 days and then 19 days after the election, the challenge was brought. And under the cases of Soles, which is a Ninth Circuit case, and Hendon, which is a Seventh Circuit case, it's our contention that this case is not redressable because you can't wait until after the election to go ahead and make the challenge. Now, I will candidly say that there are some cases which hold that an election, for certain reasons, can be challenged afterwards. But under the facts, and I think there's a fair reading of Soles and Hendon, they brought their challenge too late in this case, so we don't think it's redressable. But is there anyone who, after the fact, could challenge the election? After the fact, I would say that under certain circumstances, one could. There's a case that talks about the Office of Civil Rights bringing a challenge post-election and there was some sort of action there. Let's suppose Nichols or someone else who voted could say, you know, this margin was very narrow, less than like 30 votes, I think. And, you know, I have an affidavit here that all the corporations with multi-units in town all thought this was a good idea and they all cast multiple votes, which made up the difference. And didn't that illegal procedure mean that my right to go out and vote against it was trampled? And wasn't that a violation of the U.S. Constitution? Why couldn't somebody like Nichols bring that action? Well, first I would say that she disavowed that claim as a voter, to bring that kind of claim, because she said, I'm not seeking standing as a voter, I'm seeking standing as a municipal taxpayer. That's right, because she thought she had a better chance of going to court as a municipal taxpayer. That's correct. So you can't kind of change gears along the way. There are cases that deal with delusion arguments, and I don't think those cases are appropriately applied here. Because if you look at Nichols' claims, on the one hand, she wants to add voters to the electorate by saying that residents who came in with less than six months' time should vote, and at the same time she's attempting to disenfranchise property owners because she doesn't want those individuals who are corporations to vote. So we don't know whether there's actual delusion or not? There's no way we can tell whether there's actual delusion or not. But the possibility is ever-present. I mean, you don't know one way or the other, but the possibility is, or probability, I would even say, you don't know. But I suppose my point in going to the redressability is he should have brought that before the elections. Aside from the you say it's not timely, that's one point. But if you go to the merits of the matter and put aside the timely for a second, would these bonds have to be paid by formal speech revenues, including tax revenues, and not to be paid by tax revenues? They would have to be paid by the city. This is an ocean outfall project, so at least in design. Well, the city's raising the money through taxes, right? No, through the bond. In other words, it's a service fee. So the bond would be paid with my tax payers? You've got to pay it back. It's not a free life. No question. But the idea here is that it's a service fee, so you would get it back without it. Okay. I mean, doesn't this, this is not merely, this is not your typical referendum. This isn't a referendum of like, you know, should we authorize the sale of marijuana in Hoboth Beach. It isn't that. This goes to the essence of tax payers' expenditures, cost to the tax payers. We want to borrow $52 million. And how can you separate out the underlying aspect of the referendum and say that you can't get tax payers standing to challenge that? The theme that I think pervades in all of the cases which find in a quintessential tax payers' standing where they're challenging a referendum or challenging the issuance of bonds is that the municipality did something illegal in the process to obtain that bond or to borrow that money. In the expenditure. In the expenditure itself, yes. Because you said process. If you said in the process, then you're talking about your colleagues. I misspoke, Your Honor. It's in the expenditure. And because of that, this case is materially different than those other cases because what they're trying to do is change the rules of the voting game ahead of time and thereby declare it illegal. It is materially different. And because it's materially different, is there really another case on point where the Supreme Court has spoken clearly enough to guide us where you have a bond issue question and the question is municipal tax payers' standing? Your Honor, I don't have a very clear... That's what I'm saying. What about the Fairchild case? The Fairchild case is the one we relied upon in our briefing, Your Honor.  It was a challenge to the 19th Amendment. It was a challenge to the 19th Amendment after the fact. Did you cite any case in your brief that actually found a plaintiff not standing because he failed to object prior to the actual election, even though the funds were not yet allocated or spent? Really, I can't... On that latter point, I don't know my two best cases. I didn't see any in your brief. I saw none in your brief. So how is that point that you're making that they waited too long viable? I've never seen any. And we looked for it ourselves in chambers, that the monies were not spent that were allocated or so forth and the taxpayer suit post-stated the election. There's no such thing as a case that says it's not a viable taxpayer suit for saving purposes. I cannot, standing here, give you a case, Your Honor. All right. My time is up. Thank you. Thank you, Mr. Wall. And Mr. Finger. Thank you very much, Your Honor. I just wanted to make one point regarding prudential standing in the Rocks case. It's Judge Cowen's question. The court wrote in that case for prudential standing, the question is whether the appellant sustained a proximate individual and addressable injury based solely upon their status as municipal residents and taxpayers, end quote. So how I read that is to say it's not individual standing, whether they were denied the right through the wrongdoing. It's whether they were injured as municipal residents and taxpayers, which goes back to the economic public fisc aspect of the analysis. And so in that regard, if I'm reading it correctly, and the court will ultimately tell me if I am, Nichols has satisfied that by claiming that she is being imposed upon by $52 million worth of debt in addition to whatever the cost of the election was. But it's really the cost of the election. If Roebuck spent $50,000 on the cost of the election, doesn't she have to say that that violated her rights, that that expenditure was illegal, and she as a taxpayer can complain of their wasting the money or spending it on depleting the fisc by that $50,000? I respectfully submit, Your Honor, that that's one side of the coin. The other side of the coin is if the illegal referendum resulted in the imposition of an obligation upon the municipal taxpayers, that is, the bond issuance. Well, I would think there would be lots of cases that would say that, and we don't have any. We don't have any. You could really come in and all kinds of bond issues could be challenged on that basis. And we did cite a couple of state court cases. I have not seen, other than the Crouch case, a situation where it involved a bond issuance. I'm sorry, the Crampton case. I mean, even then it was not directly to this. So I would see, Your Honor, that there is no guiding Supreme Court case or the federal case I know in that circumstance. Unless Your Honor has any other questions, that's all I have. Thank you, Mr. Finger. Thank you. And we thank both counsel for their work on an interesting case, and we'll take the matter under advisement.